# SUPREME COURT.

## BENJAMIN GOULD agt. THE CAYUGA COUNTY NATIONAL BANK and NELSON BEARDSLEY.

*Release — when and when not a bar to an action — when obtained by false and fraudulent representations no bar — When knowledge by one officer of a bank that representations are false binds the bank — Evidence of fraud in a release competent — Where no consideration is paid for release nothing is required to be returned before bringing action to set aside*

Evidence that a release of a cause of action was obtained by false and fraudulent representations is competent.

Knowledge by one officer of a bank that such representations were false binds the bank, though such officer represents to the bank that such representations are true.

Where no consideration is paid by a party for a release of a cause of action, it is no defense to an action to set aside such release that the party bringing the action has not returned, or offered to return, the property received under the settlement.

On the facts stated: *Held*, that the officers of the bank had the means of ascertaining whether plaintiffs' bonds had been replaced. The vault was under their control, and it was the proper place to deposit the bonds if they had been returned.

That S., having told the president and other officers that he had returned the bonds, and such statement being false, does not excuse the bank from liability on a claim of an outside party.

The bank cannot escape the consequences of a false representation made to a person dealing with it, and who, by relying on it is injured, by proving that its officers, or some of them, were told the falsehood by some other agent or officer of the corporation.

The party has the right to rely upon the representation as being matter within the personal knowledge of the person making it, unless the source from which the information was obtained was disclosed to him before he entered into the contract.

Plaintiff had the right to assume that the person making the representation as to the return of his bonds had personal knowledge of the fact;

and especially had he the right to assume they were not making it upon the faith alone of the cashier, S. It cannot be doubted but that the representations influenced plaintiff.

The fact that plaintiff made no offer to return the property and value received under the release, before this action was commenced, does not affect his rights if, as it is claimed, the defendant paid nothing under the settlement.

*Fourth Department, General Term, October,* 1877.

In June, 1865, the plaintiff had, in the vault of the Cayuga County National Bank, $55,000 of government bonds, left there for safekeeping ; they were in a paper package, sealed with sealing-wax, and marked with plaintiff's name.

The directors of the bank, organized under the state laws, desired to transform it into a national bank, to do which the laws of the United States required a deposit of national bonds with the comptroller of the currency ; the bank did not have bonds to the amount required, and in order to make up the amount, borrowed of persons in the vicinity enough to make up the amount required.

On the 14th June, 1865, the defendant, Beardsley, president of the bank, knowing that the plaintiff had a package of bonds in the vault, directed the cashier to call upon him and get permission for the bank to use the bonds for the purpose aforesaid, and to render the application successful, Beardsley wrote to the plaintiff a letter of which the following is a copy :

"AUBURN, N. Y., *June* 14, 1865.

" Mr. BENJAMIN GOULD :

" DEAR SIR.—At a meeting of our directors yesterday, it was decided to convert the bank into a national bank without delay. This will require a deposit of United States securities to the amount of $85,000. We have ordered the purchase of part of this sum, but it is not convenient for the bank to spare funds for the whole amount on such short notice. Mr. Starin and I have thought it best to ask you to lend the bank so much of your United States five-twenties as may be needed

Gould agt. Cayuga County National Bank.

for the purpose named; the bank will replace the securities soon, and before any interest will be due thereon. In addition to the security of the bank for the return of the securities within the time specified, you may consider me as hereby pledging my personal responsibility for the performance on the part of the bank.

" Very truly yours.

" N. BEARDSLEY."

The cashier carried this letter to the plaintiff, and he consented to the use of the bonds by the bank.

On the return of the cashier, he went to Beardsley's office in the bank and informed him of the result of the application, and at once went to the vault and brought with him plaintiff's package of bonds, and on opening it there were found in it $55,000 of bonds. Beardsley decided to take for the use of the bank $44,000 of them to be deposited with the comptroller of the currency, and the remaining $11,000 were placed by the cashier in his private box, kept in the vault, and they were afterwards used by him for his own purposes. The plaintiff was not informed, until years afterwards, that the whole of the $55,000 of bonds were not used by the bank.

During several years the plaintiff was credited in his bank account with not only the interest on the $55,000 of bonds, but also of an additional amount of $19,500 of bonds that plaintiff had on deposit in the bank.

Soon after these bonds were borrowed, and before the time fixed for the return of the same to the plaintiff, the Cayuga County National Bank, which in the meantime had been organized, placed in the hands of its cashier (Starin), available securities to an amount sufficient to purchase bonds to put in the place of those borrowed, and the cashier did purchase and put them in the place of those borrowed, but did not restore any of those borrowed of the plaintiff, although he told the president from time to time that he was purchasing bonds for that purpose, and at one time told him he had purchased

the whole quantity required to replace the bonds borrowed, except $10,000.

The cashier appropriated to his own use the whole of the plaintiff's bonds, except about $3,000.

The plaintiff called at the bank on several occasions between the time the bonds should have been replaced and the discovery of their misappropriation by the cashier, and was, on each occasion, told the bank was using them.

When the plaintiff learned of the loss of the bonds he called at the bank and the president told him his bonds had been replaced by the bank and, therefore, stolen by the cashier, and for that reason insisted that the bank was not liable, and Starin and other officers of the bank made the same statement.

A compromise was finally proposed, and after some negotiation was agreed upon, that the bank and Starin should be released upon paying to the plaintiff $30,000 in cash and the notes of Starin, payable on demand, for $63,300 with divers collaterals, and, thereupon, the plaintiff executed and delivered the following release, viz.:

"Whereas a controversy has existed, and does now exist, between Benjamin Gould and The Cayuga County National Bank in relation to the liability of said bank to said Gould, by reason of certain transactions in regard to certain United States securities, which controversy has been amicably settled between the parties by the payment by said bank to the said Gould of the sum of $25,000, now, in consideration of said sum from said bank, I do hereby release and discharge said bank from all liability or claim by reason of any matter or thing growing out of the matters above referred to.

"AUBURN, *March* 13, 1873.

(Signed)          "BENJAMIN GOULD."

As Starin was insolvent and liable to be proceeded against as a bankrupt, and if so proceeded against within four months from the delivery to plaintiff of the property as collateral to

his note the transfer would be held void, the attorney of the plaintiff required the promise of the president of the bank, and of another creditor of said Starin, that neither the bank nor such other creditor would proceed against Starin in bankruptcy.

After the execution of this release, and in October, 1873, the plaintiff learned that it was not true that his bonds had been replaced, as was asserted by the officers of the bank and by Starin, and he then renewed his claims against the bank on the ground that he had been induced to release the bank and Beardsley, relying upon the representation that the bonds had been replaced and afterwards misappropriated by Starin, which representation was false and fraudulent.

The action was brought for the value of the bonds and interest thereon. The defendants in their answer deny all the material allegations of the complaint, and as affirmative defenses set up the release and statute of limitations.

On the trial the plaintiff was examined as a witness in his own behalf and was asked by the plaintiff's counsel whether, in all his negotiations, it was upon the basis of the fact that the bonds had been returned to the bank and afterwards taken away by the cashier?

The question was objected to by the defendants' counsel and rejected by the court, to which ruling the plaintiff's counsel excepted.

At the close of the evidence defendants' counsel asked the court to nonsuit the plaintiff, or to direct a verdict for the defendants, and he asked it upon the release and discharge which had been put in evidence.

The court nonsuited the plaintiff.

The plaintiff's counsel then asked the court to submit to the jury the question whether the settlement was or was not procured by the officers of the bank in bad faith, and also the question whether the bank paid any thing.

The court refused said requests, and plaintiff's counsel excepted.

The court then ordered the case to be heard at general term in the first instance.

*Rollin Tracy* and *H. R. Selden,* for plaintiff. The motion to dismiss the complaint was granted on the sole ground that the receipt given in evidence constituted a bar to the cause of action. If that receipt was obtained by fraud it constituted no bar. The compromise of a doubtful claim, or claim honestly disputed, is binding upon the parties, but only upon the condition that no fraud has been practiced by either party to produce the compromise (*Steuart* agt. *Ahrenfeldt,* 4 *Denio,* 189; *Farmers' Bank* agt. *Blair,* 44 *Barb.,* 652, 653; *Steele* agt. *White,* 2 *Paige,* 478). That receipt was obtained by a most palpable and wicked fraud, *i. e.,* by the representations of the bank officers that the bonds had been returned to the bank and had afterwards been taken away. It had been decided prior to the time of settlement and giving of that receipt that national banks were not authorized to receive bonds on special deposit for safekeeping, and were not liable for the misappropriation by their officers of securities so deposited (*Wiley* agt. *First Nat. Bank of Brattleboro,* 47 *Vermont,* 546; approved by ALLEN, J., *in First National Bank* agt. *Ocean National Bank,* 60 *N. Y.,* 279, 294; *Week-ler* agt. *First National Bank of Hagerstown,* 42 *Maryland,* 581). Hence, the necessity for such representations. The general rule that notice to the agent is notice to the principal applies to corporations as well as to individuals (*McEwen* agt. *Mont. Co. Mut. Ins. Co.,* 5 *Hill,* 101; *Cumberland Coal Co.* agt. *Sherman,* 30 *Barb.,* 560; *Angell & Ames on Corporations,* 299).

*W. E. Hughitt* and *W. F. Cogswell,* for defendants. The paper executed to the bank by the plaintiff is a technical formal release, and a complete discharge of the cause of action asserted against it (*McCrea* agt. *Purmort,* 16 *Wend.,* 460, 474; *Stearns* agt. *Tappin,* 5 *Duer,* 294). Assume that the

representations were made and that those representations were false and fraudulent, then the plaintiff cannot set up that the release was void for fraud while at the same time he holds on to the consideration upon which that release was given (*Story on Contracts, vol. 1, section* 623 [*fifth ed.*]; *Mason* agt. *Bovet,* 1 *Denio,* 69; *Jennings* agt. *Gage,* 13 *Ill.,* 610; *Tisdale* agt. *Buckmore,* 13 *Me.,* 461; *Cocks* agt. *Rucks,* 34 *Miss.,* 105; *Evans* agt. *Gale,* 17 *N. H.,* 573; *American ed., Kerr on Fraud, page* 327, *note*). A contract cannot be rescinded by one party unless both can be placed in the same situation in which they stood previous to the contract (*Chance* agt. *Commissioners of Clay County,* 5 *Black* [*Ind.*], 441; *Pettus* agt. *Roberts,* 6 *Ala.,* 811; *Buell* agt. *Pale,* 8 *Blackf.,* 55; *Calhone* agt. *Davis,* 2 *Ind.,* 532; *Pettee* agt. *Hinders,* 19 *Ind.,* 93; *McGuire* agt. *Callahan, id.,* 128; *Griffith* agt. *Fred. County Bank,* 9 *Gill. & J.,* 424; *Conner* agt. *Henderson,* 15 *Mass.,* 319; *Brown* agt. *Witter,* 10 *Ohio,* 142; *Hammond* agt. *Buckmaster,* 22 *Vt.,* 375; *Moore* agt. *Barre,* 11 *Iowa,* 198; *Potter* agt. *Titcomb,* 22 *Me.,* 800).

MULLIN, *P. J.* — The plaintiff having been nonsuited solely on the ground that the release was a bar to the action we shall not consider any other of the questions relating to the merits presented by the counsel for the appellant; we can properly review only the legal propositions actually decided by the court below.

The execution and delivery of the release were admitted upon the trial, and unless the plaintiff has by his evidence relieved himself from the operation of them he was rightly nonsuited.

The ground relied upon to relieve the plaintiff from the operation of the release is, that it was obtained by false and fraudulent representations.

Fraud vitiates all transactions into which it enters (*Chitty on Contracts* [11*th Am. ed.*], 1035).

It defeats a release as effectually as any other contract (1 *Chitty's Pl.*, 613).

It being competent, then, for the plaintiff to assail the release as fraudulent we are next to inquire whether there was sufficient evidence of fraud given by the plaintiff to require the submission of that to the jury.

The officers of the bank had the means of ascertaining whether the plaintiff's bonds had been replaced. The vault was under their control, and it was the proper place to deposit the bonds if they had been returned. It was not pretended that any search was ever made by any officer of the bank. When they told the plaintiff that the bonds had been returned they stated that which they did not know to be true, and of which they had no knowledge except what they derived from Starin.

Starin's testimony on the trial shows that if he told the other officers of the bank that plaintiff's bonds had been returned he told them an untruth, they had not been and he knew it.

The bank cannot escape the consequences of a false representation made to a person dealing with it, and who by relying upon it is injured, by proving that its officers, or some of them, were told the falsehood by some other agent or officer of the corporation.

The party has the right to rely upon the representation as being a matter within the personal knowledge of the person making it, unless the channel through which the information was received was disclosed to him before he entered into the contract or assumed the liability.

The plaintiff had the right to assume that the officers making the representation as to the return of his bonds had personal knowledge of the fact, and especially had he the right to assume they were not making it upon the faith of the statement alone of the cashier.

This was especially true as to the president. He was employed to watch over the interests and business of the

bank, to see that neither the cashier or other officers stole or squandered its property or wronged those doing business with it.

It was solely his duty to see that the bonds of the plaintiff were returned. The amount was large. The bank was liable if they were not returned as was he himself. The plaintiff could not hesitate to believe his statement, earnestly and repeatedly made, that the bonds had been returned. He was speaking as the chief financial officer of the bank, and his statement was the statement of the bank.

The counsel of the plaintiff knew, if he did not, that the bank was not liable for the bonds if they had been returned to the bank and thereafter unlawfully appropriated by Starin or any other person.

If he believed the officers of the bank it was not liable, and his only recourse was against Starin; to him must he look for whatever indemnity he should obtain for the wrong done him.

Starin was unable to do more than make good a small part of the loss, and as he was largely indebted to other persons and to the bank itself a compromise became a matter of the highest necessity and importance.

That the representation influenced the plaintiff in agreeing to the compromise and consequent release cannot, it seems to me, be doubted, but if the evidence did not establish the fact to the satisfaction of the court and jury the plaintiff's counsel offered to prove by the plaintiff that in all his negotiations as to the compromise he acted upon the basis of the fact that all the bonds had been returned and afterwards taken away by the cashier.

This evidence the court rejected, and it seems to me improperly. If not necessary to prove the fact offered the evidence was quite material, establishing the fact, as it would tend to do, that the plaintiff relied upon the representation, and was influenced by it, in entering into the compromise.

It is essential, in order to establish a fraudulent representa-

tion, that it was made with intent to deceive the person to whom it was made (*Kerr on Fraud*, 55).

This intent is established when it is shown that the representation is false within the knowledge of the person making it, or that he had no reasonable ground for believing it to be true, and makes it with the view to induce another to act upon it who does so accordingly to his prejudice though he may not have been instigated by a morally bad motive (*Kerr*, 55, 56).

The representations of Starin came directly within the principle above laid down by Kerr. He was the second highest officer in the bank, had full knowledge of the falsity of the statement and the bank was bound by it. It was made while the cashier was performing the duties of his office and in reference to the business of the bank, and was made with intent to deceive the plaintiff.

If the jury had found these facts as it might have been done the plaintiff was entitled to recover. A case was made for avoiding the release, and that out of the way the right to recover was complete.

It is proper I should say that in preparing the statement of facts that precedes the opinion I made it solely from the evidence of the plaintiff's witnesses without any reference to the evidence on the part of the defense, because the case not being submitted to the jury the plaintiff had the right to require the case to be reviewed on the assumption, by the court, that the jury might have believed the version of the transaction between the parties given by his witnesses.

In view of the legal questions which are put forth in this opinion they are, upon the same assumption, that the evidence of the plaintiff's witnesses is the correct version of the acts and dealings of the parties without any reference to the case as presented by the defendants' witnesses.

The defendants' counsel suggests, as an answer to the alleged fraud in the release, that if the fraud was proved and found by the jury that the plaintiff could not recover as he

Gould agt. Cayuga County National Bank.

has not returned the property received by him as the consideration of the release.

I do not find that this point was suggested on the trial, and it may be that the plaintiff has an answer to it had it been made. Unless there is an answer to it, it is probably fatal to the plaintiff's action.

If the fact is, as alleged by the plaintiff's counsel, that the bank paid nothing as the consideration for the release it would be void and neither the bank nor Beardsley could require any thing to be returned to them.

These questions will come up on another trial and can be disposed of in view of the whole evidence in the case.

The nonsuit is set aside and a new trial granted, costs to abide the event.

TALCOTT, J., concurring.

SMITH, J., does not sit.